### HENDERSON *et al. v.* SESSOMS.

1. The contract, considered in its entirety, is not ambiguous. It was the duty of the court to construe it; and it was correctly construed.

2. Having properly construed the phrase, "after said turpentine place is worked out and exhausted," to mean after the turpentine trees on the place are worked out and exhausted, the evidence offered by the defendants for the purposes of construing the contract, and explaining what was meant by the word "place" in the phrase in question, was properly rejected by the court.

3. The evidence demanded a verdict for the plaintiff, and the court did not err in so directing.

No. 3947. MARCH 13, 1924. REHEARING DENIED MAY 15, 1924.

Complaint for land.   Before Judge Crum.   Clinch superior court.   July 25, 1923.

Prior to February 7, 1903, F. B. Sirmans owned and operated a turpentine place in Clinch County, Georgia. The "still" location, including shanties, cooper-shop, etc., were on the lands of Sirmans. He was at that time working some timber on his own lands, and some on the lands of others near by. On February 7, 1903, Sirmans sold out his entire place to J. G. Cranford and B. G. Lastinger, their heirs and assigns, for the sum of $20,000. Sirmans signed a contract to Cranford and Lastinger, stating the property conveyed, the terms of sale, etc. This contract also stated that Sirmans was to execute proper warranty leases to the timber and the lands upon which the still and buildings were located, in accordance with the terms thereof. Leases of the timber were executed and delivered; but no further conveyance, other than the contract, was made to the still and buildings. The material parts of the contract are: "This indenture made and entered into on this the 7th day of February, A. D. 1903, between F. B. Sirmans of Clinch County, Georgia, party of the first part, and J. G. Cranford and B. G. Lastinger, both of Lowndes County, parties of the second part, witnesseth, that the said party of the first part, for and in consideration of the sum of twenty thousand dollars, . . has bargained and sold and does by these presents bargain and sell unto the parties of the second part, their heirs and assigns, . . his entire turpentine place at Sirmans, Georgia, consisting of fifteen crops of fourth-year boxes, seven crops of third-year boxes, eight crops second-year boxes, and about eight crops virgin boxes, about ten thousand acres of uncut timber, one twenty-barrel still ready set in brick, with tub, spirit and rosin shelter, platforms, glue-pot and furnace, four rosin-strainers, two rosin-dippers, one Schofield steam-pump, and house, well, and piping, one cooper-shop and tools, ten trus-hoops, 125 dip-barrels, 30 patent heads, 25 dip-buckets, 25 dip-irons, 15 scrape-boxes, 25 scrape-irons, 2 dozen imported hoes, hand made, all hacks, cutters, and whetters necessary, two bay mare-mules five years old, two black mare-mules six years old, two mules eight years old, two horse-mules eight or

nine years old, one horse, two mares, two two-horse White Hickory wagons, iron axles and harness for same, nine miles tramroad, stringer-track, two trucks, 24 inch wheels eight-inch face, bodies complete for use, side-track and warehouse at Humphries, Georgia, on A. C. L. Ry., fourteen new framed shanties in quarters, fifteen more shanties, one dwelling-house and garden at Pineville. . . That of all personal property this contract is an absolute sale and conveyance of same to the parties of the second part, and the party of the first part warrants and promises to defend the title to the same, and that the boxes and uncut timber he will execute proper warranty leases, and in addition to the above lease will execute a lease to the lands upon which the still and buildings aforesaid are located. It is further understood that all boxes shall be worked three years from date of cutting. . . It is further agreed and understood that all shanties and buildings south of the Mud Creek and Dupont road shall revert back to the party of the first part, his heirs and assigns, after said turpentine place is worked out and exhausted."

This suit was to recover the shanties and buildings. The plaintiff, Mrs. Sessoms, having purchased the Sirmans interest at receiver's sale, owned the fee in the land and the reversionary interest of F. B. Sirmans in these buildings. The defendants held under the contract which Sirmans gave to Cranford and Lastinger.

Plaintiff contended that the rights of the defendants had terminated, and that the property had reverted to her by the terms of the contract, the timber having been worked out which was conveyed simultaneously with the making of the contract. Defendants contended that their right to the use of the shanties and buildings under the contract had not expired; that the words of reversion used in the contract, "after said turpentine place is worked out and exhausted," did not refer to the particular trees which were at that time conveyed or leased for turpentine purposes, but it meant that Cranford and Lastinger and their successors in title should have the use of these buildings so long as there was available timber in the territory which could be profitably worked at that point. This construction was put upon the contract by one of the original parties to the contract, B. G. Lastinger, who was offered as a witness by the plaintiff, and whose evidence upon cross-examination, on that particular point, was excluded by the court,

this ruling being complained of in the motion for new trial. Lastinger further testified (this testimony also being excluded) that this was the intention of the parties at the time this contract was drawn; that during the ten years which he and his partner, J. G. Cranford, worked the place they worked at least twenty crops of boxes outside the timber conveyed to them by Sirmans, that they brought the crude gum in from this timber and stilled it at this same still and worked it from the same shanties, and that during all of that time Sirmans was living within three hundred yards of the still and shanties, and no question was ever raised about their right to work other timber at this turpentine place. It was further contended by the defendants (and evidence was offered in support thereof, but was excluded by the court) that the term, "work out and exhaust a turpentine place," was a trade term and had a fixed and definite meaning to the turpentine operators in that particular locality; that it meant so long as there was timber available for turpentine purposes which could be profitably worked and the gum manufactured profitably at that point, and not when the particular trees then conveyed were worked out and exhausted; and that it was impracticable for the term to have any other meaning, since it was necessary for all turpentine operators to box new timber every year to take the place of that which was being exhausted, in order to successfully carry on their business. The court ruled that the contract was unambiguous, and that its construction was for the court; and accordingly directed a verdict in favor of the plaintiff, and thereafter refused a new trial. As stated in the brief for the plaintiffs in error, there are three principal questions in this case: "First, did the court err in excluding the evidence offered by the defendants? Second, is the contract ambiguous, and should it be construed by the court or the jury? Third, is the construction which the court placed upon this contract a proper construction?"

*H. E. Oxford* and *Quincey & Rice,* for plaintiffs in error.

*Parks, Reed & Garrett,* contra.

GILBERT, J. 1. In their brief counsel for plaintiffs in error have properly stated that there are three questions in the case, which are set out above. The decision of the case, however, depends entirely upon the second and third of those questions, to wit: "Is the contract ambiguous, and should it be construed by the court or

the jury?" The trial court held that the contract was not ambiguous, and accordingly construed the contract. In our judgment the trial court correctly held that the contract was not ambiguous. It necessarily follows from that conclusion that it was the duty of the court to construe the contract, and that extraneous parol evidence was not admissible to explain it. The "place" leased by F. B. Sirmans to Cranford and Lastinger consisted of lands on which were situated certain buildings used for various purposes in connection with the turpentine still, and standing trees from which they obtained the turpentine. The thing "worked" by the lessees was the trees, and these were the sources from which they obtained the gum distilled into the commercial product. When the trees on the leased lands had been "worked" and no longer produced turpentine, under the terms of the contract the lease was ended. To construe the lease contract in the manner insisted upon by the plaintiffs in error, that is that the lessees were to retain the shanties and buildings as long as they could be used for the purpose of distilling turpentine transported from other lands, would be to give to it a meaning so indefinite as to render it void for uncertainty. If the shanties and buildings in question could be held until trees on adjoining or other lands were "worked" and exhausted, to what radius could the contract be supposed to apply, or to what distance from the leased lands could it have been the intention of the parties that the contract should apply? There is absolutely nothing in the contract to furnish any basis for ascertaining the meaning of the parties if that construction should be given. Construing the contract as a whole, we think it is clear and unambiguous; that it means that the shanties and buildings mentioned in the clause of the contract in question were to revert to the party of the first part when the turpentine trees on the leased place were worked out.

2, 3. The second and third headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur.*